# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 21-mj-1121
2423 BRASHER AVENUE, )
NASHVILLE, TENNESSEE 37206 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
see Attachment A

located in the ___Middle___ District of ___Tennessee___, there is now concealed *(identify the person or describe the property to be seized)*:
see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 2261A | Cyberstalking |

The application is based on these facts:
see attached statement

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Savannah Solomon
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means).*

Date: 06/08/2021

*Judge's signature*

City and state: Nashville, Tennessee        Hon. Barbara D. Holmes, U.S. Magistrate Judge
*Printed name and title*

# STATEMENT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Savannah Solomon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since 2018. As an FBI Agent, I have attended training at the FBI Academy in Quantico, Virginia. I have been trained in conducting investigations into violations of Title 18 of the United States Code. Prior to my employment as an FBI Agent, I worked in intelligence analysis for the FBI from 2010 until 2018.

2. During the course of my professional experience and participation in the investigation of violent crime, narcotics, crimes against children, and other offenses, I have had the opportunity to interview numerous defendants, witnesses, victims, and other investigators and attorneys regarding violent crime, to include stalking.

3. Based on the above facts and circumstances, I believe sufficient probable cause exists that violations of 18, United States Code, Section 2261A(2), Cyberstalking (the subject offense), have been committed by ALIA SAAED. There is also probable cause to search the information described in Attachment A for evidence of these crimes, more particularly described in Attachment B.

4. Except where indicated, all statements referenced herein are set forth in substance and in part, rather than verbatim.

## PROBABLE CAUSE

## BACKGROUND

5. Victim R.J. and ALIA SAAED began a romantic relationship in or around 2012 when they both lived in or around Los Angeles, CA. Per Victim R.J., in or around May 2014, Victim R.J. told SAAED he would never want to have a child with her. About four weeks later, SAAED told Victim R.J. she was pregnant. Victim R.J. was not supportive of the pregnancy, and SAAED told him she refused to have an abortion but advised Victim R.J. to hit her in the stomach if he did not want a baby. He did not touch her, and she left the house. About 15 minutes later, SAAED informed Victim R.J. she had miscarried.

6. SAAED began contacting Victim R.J.'s family and friends, calling him a "child murderer." Victim R.J. felt guilty for not having been a supportive boyfriend, so he tolerated the harassment. Over the following years, SAAED and Victim R.J. had an on-again-off-again relationship, which Victim R.J. deemed "guilt dating." Between 2014 and 2016, Victim R.J. stated SAAED destroyed Victim R.J.'s property and kicked him to the point of bruising his ribs.

1

At Halloween 2016, she went to the house where Victim R.J. was visiting a friend and told all of the trick-or-treaters that Victim R.J. was a pedophile.

7. As early as mid-2015, SAAED began calling Victim R.J. from "burner" phones because he had been screening her calls. She threatened that she would always be able to find his contact information, and she always found his phone number after he changed it. She characterized every example of sex within their relationship as rape.

8. In April 2017, Victim R.J. moved to Nashville. SAAED found him in Nashville and threatened to have him evicted, so Victim R.J. moved to Dallas, TX. SAAED followed him to Texas, and in the summer or fall, his apartment management asked Victim R.J. to move out because SAAED sent "nasty" comments to an apartment employee while purporting to be Victim R.J.. At this point Victim R.J. believed he would never get away from SAAED and agreed to move to Nashville with her.

9. By 2019, Victim R.J. was regularly kicked out of the house or he chose to stay elsewhere because of SAAED's physical abuse. In September 2019, SAAED requested that Victim R.J. sign a contract to pay her $1615 a month towards SAAED's student loans for a period of ten years to compensate for the damages Victim R.J. had caused her. Victim R.J. provided a copy of the signed paper to the FBI. In Fall 2019, SAAED caused significant damage at Victim R.J.'s temporary residence. At this point, Victim R.J. felt "no more hope" and put a gun to his head. SAAED called the police, and Victim R.J. spent 10/04/2019 – 10/07/2019 hospitalized at TriStar Centennial Medical Center, Nashville, for evaluation. Victim R.J. moved to Savannah, GA, shortly thereafter.

## ONLINE AND TELEPHONIC HARASSMENT

10. In or around July 2020, Victim R.J. went to Nashville to assist SAAED with some car trouble. At this time, SAAED used Victim R.J.'s phone to call Victim R.J.'s girlfriend and called her a "dirty bitch." SAAED required Victim R.J. to make recorded admissions before she would return the phone. The next day, SAAED showed up in Savannah.

11. Per Savannah Police Department reports, on 07/10/2020, SAAED came to Savannah uninvited to leave the dog she shared with Victim R.J. at his house. An argument ensued, and the police intervened. SAAED refused police requests to take the dog back, and she abandoned it. Victim R.J. was advised of options for placement of the dog, and he was instructed in the process of obtaining a no contact order against SAAED.

12. By August 2020, Victim R.J. told his girlfriend he would stop sending money to SAAED. Per Victim R.J., after he stopped sending SAAED money, SAAED's behavior escalated. SAAED started Facebook profile RJ.SAYEGH.3 to impersonate him. She used the profile to harass his employer and management. He learned about the profile via his office administrator. He saved screenshots of the Facebook profile, and your affiant reviewed these

2

screenshots.  In October 2020, Victim R.J. became aware of RAMEZSAYEGH.COM, which served to defame Victim R.J. and his associates.  Victim R.J. believed he had lost job opportunities due to the negative online presence associated with his name.  Victim R.J. stated SAAED previously told him, "if you don't send me money, I'm going to fuck your world up," and he believed she was making good on her word.

13.     On 11/15/2020, the same SPD officer filed a report that he had dealt with SAAED several times prior to the date in reference to an ongoing issue with the custody of the dog.  SAAED had returned to Savannah to retrieve the dog but did not follow the officers' advisement on the proper steps to take.  SAAED continuously stated that Victim R.J. murdered her unborn child and had raped her.  During this police interaction, the dog was returned to SAAED at SPD Headquarters.  SAAED was also banned from Victim R.J.'s residence, though she refused to sign the form banning her.

14.     In November 2020, SAAED filed an order of protection against Victim R.J. in Nashville, stating Victim R.J. had raped her in 2019.  After this filing, the libelous website was taken down.  Victim R.J. filed a counter protection order.  At the January 2021 hearing, SAAED dropped her charges and Victim R.J. followed suit at the advice of his attorney.  The libelous website came back online.

15.     SAAED continued to attempt to contact Victim R.J..  On 03/02/2021, Victim R.J.'s girlfriend reported the situation to the FBI and provided examples of texts and voicemails from SAAED.  One voicemail your affiant reviewed stated words in the effect of "… and then I'm going to come to Savannah at the time and the place that I choose and I will be having some words with you in front of everyone in the neighborhood, and I'll choose just the right time, dog…" before devolving into a string of obscenities and ending with something to the effect of "well, unfortunately for you, it's going to be a very unpleasant place for you to live in".

16.     Both Victim R.J. and his girlfriend were interviewed by FBI Savannah and they gave consent to search their cell phones and a tablet.  Your affiant reviewed the devices and identified hundreds of screenshots received from different phone numbers expressing similar content.  For example, on 07/23/2020, phone number 678-541-8907 stated "That recording would be perfect for jamals [Victim R.J.'s father's name] funeral.  I want to celebrate his death like you pigs celebrate my child's death in my body."  Another undated screenshot from "Alia" stated "Put the card info back in now.  I love you very much.  That's why I'm going to satisfy my cock needs when Jamal Does Dies."  One screenshot from a number purporting to be Sara Georgiadis, the late mother of Victim R.J.'s girlfriend, stated "Athena pumps her pussy full of used greasy microwaves on her mothers grave while hiam fingers dog pussy's asshole.  You get on all fours with a dead child wrapped around your camel clit…"

17.     On 08/15/2020, phone number 949-652-7858 sent Victim R.J. the below message

3



18.     On 05/24/2021, FBI Savannah accessed RAMEZSAYEGH.COM, captioned "Abusers who kill the unborn…" as publicly available.  The website featured paintings in a similar style to the above and an audio recording purportedly made 07/07/2020 in which a male that sounds similar to Victim R.J. agrees that he murdered the child he shared with the woman prompting him.  The website contains approximately 14 pages of photos, audio recordings, and primarily text outlining grievances with Victim R.J.'s name and likeness, to include child murder.  The site also states that more details regarding Victim R.J.'s behavior, words, and actions would be available on the site in August 2021, following the conclusion of "a geriatric pregnancy."  Your affiant notes that Victim R.J.'s girlfriend is pregnant and due to give birth in the summer of 2021.

19.     Your affiant observed hundreds of messages of similar content and tone that are dated as early as 11/23/2016 and are sent from different phone numbers.

20.     Beginning on 04/02/2021, FBI Savannah has served numerous subpoenas on telephone companies to ascertain the subscriber information for over 50 phone numbers, numerous email accounts, and one Facebook profile believed to be associated with SAAED based on victim phone review.  This process is ongoing.

4

21. On 04/13/2021, Google responded with the information summarized below:

| Email | Name | Created Date | Last Login Date | TOS IP | Recovery email | Recovery SMS |
|---|---|---|---|---|---|---|
| alia.saaed@gmail.com | Alia Saaed | 4/23/2009 | 4/12/2021 | 76.172.124.77 | saaedalia@yahoo.com | n/a |
| fuk.u.rjsayegh@gmail.com | fuk u. RJ Sayegh | 9/10/2014 | 3/29/2015 | 23.242.251.50 | saaedalia@yahoo.com | n/a |
| aliasaaed4@gmail.com | Alia S | 1/29/2015 | 11/6/2019 | 76.175.183.104 | aliasaaed3@gmail.com | n/a |
| hey.thanks.for.everything.rj@gmail.com | Hey Thanks | 6/11/2015 | 11/13/2019 | 76.175.183.104 | aliasaaed4@gmail.com | n/a |
| thesecondhouseongardener@gmail.com | La Fin | 6/23/2015 | 11/9/2019 | 76.175.183.104 | heythanksforeverythingrj@gmail.com | n/a |
| murdererinhawaii@gmail.com | Murderer In Hawaii | 7/1/2015 | 11/7/2019 | 76.175.183.104 | bhssatlanta@gmail.com | n/a |
| markettaharlan@gmail.com | Marketa Harlan | 9/3/2015 | 9/27/2015 | 76.175.183.104 | thesecondhouseongardener@gmail.com | n/a |
| rjsidetable@gmail.com | RJ sidetable | 11/22/2019 | 1/8/2020 | 75.49.174.72 | n/a | n/a |
| rajasidetable@gmail.com | Ramez Sidetable | 11/23/2019 | 11/23/2019 | 75.49.174.72 | rjsayegh@gmail.com | n/a |
| middleagedparty@gmail.com | Rj Thepig | 11/24/2019 | 11/24/2019 | 75.49.174.72 | rjsayegh@gmail.com | n/a |
| hiamfukhoury@gmail.com | Hiam Fakhoury | 11/26/2019 | 1/11/2020 | 75.49.174.72 | Sayeghrj@gmail.com | 3238737344 |
| iprayyoupigsdie@gmail.com | Ramez Sayegh | 11/30/2019 | 1/8/2020 | 2600:1700:f330:1970:4d76:657:1968:5426 | rjsayegh@gmail.com | n/a |
| sayeghsidetable@gmail.com | Sidetable Sayegh | 12/1/2019 | 1/1/2020 | 2600:1700:f330:1970:4d76:657:1968:5426 | n/a | 3238737344 |
| rjjerksofftosarahsayegh@gmail.com | Sarah Sayegh | 11/11/2020 | 12/20/2020 | 75.49.174.72 | jaredborjnblakely@gmail.com | n/a |
| aliasaaed00000@gmail.com | Alia Saaed | 2/13/2021 | 3/10/2021 | 2600:1700:5d50:7930:40f:b69f:2c1b:27d8 | aliasaaed@gmail.com | n/a |

22. Of note, aliasaaed4@gmail.com was listed as a recovery email address for heythanksforeverythingrj@gmail.com, which was the recovery address for thesecondhouseongardener@gmail.com, which was the recovery address for markettaharlan@gmail.com. This is in addition to additional recovery addresses in SAAED's name. Additional review of the Internet Protocol logs indicated overlap across accounts for each account and is summarized below:

| Email | Note |
|---|---|
| aliasaaed4@gmail.com | Same TOS IP for Heythanksforeverythingrj, aliasaaed4, markettaharlan, murdererinhawaii, and La Fin |
| hey.thanks.for.everything.rj@gmail.com | Same TOS IP for Heythanksforeverythingrj, aliasaaed4, markettaharlan, murdererinhawaii, and La Fin |
| thesecondhouseongardener@gmail.com | Same TOS IP for Heythanksforeverythingrj, aliasaaed4, markettaharlan, murdererinhawaii, and La Fin |
| murdererinhawaii@gmail.com | Same TOS IP for Heythanksforeverythingrj, aliasaaed4, markettaharlan, murdererinhawaii, and La Fin |
| markettaharlan@gmail.com | Same TOS IP for Heythanksforeverythingrj, aliasaaed4, markettaharlan, murdererinhawaii, and La Fin |
| rjsidetable@gmail.com | TOS IP matches aliasaeed@gmail.com IP log 74 times |
| rajasidetable@gmail.com | TOS IP matches aliasaeed@gmail.com IP log 74 times |
| middleagedparty@gmail.com | TOS IP matches aliasaeed@gmail.com IP log 74 times |
| hiamfukhoury@gmail.com | TOS IP matches aliasaeed@gmail.com IP log 74 times |
| iprayyoupigsdie@gmail.com | TOSIP start (2600:1700:f330:1970:) matches aliasaeed@gmail.com IP log 143 times. Matches TOS IP sayeghsidetable@gmail.com 100%. |
| sayeghsidetable@gmail.com | TOS IP start (2600:1700:f330:1970:) matches aliasaeed@gmail.com IP log 143 times. Matches TOS IP iprayyoupigsdie@gmail.com 100%. |
| rjjerksofftosarahsayegh@gmail.com | TOS IP matches aliasaeed@gmail.com IP log 74 times<br>107.223.94.23 (last login IP) matches aliasaaed@gmail.com IP log 190 times |

23. On 04/30/2021 Facebook responded and provided information related to Account Identifier rj.sayegh.3. According to Facebook, this account was created on 09/30/2020 from IP address 107.223.94.23 on 09/30/2020 using email account jaredborjnblakely@com, which is the backup account for rjjerksofftosarahsayegh@gmail.com.

24. On 05/23/2021, AT&T provided that the above-referenced IP address and timestamp was associated with Mohammad Saaed, 218 Camelot Dr, Morganton, NC. Per Google, this IP address was also utilized by aliasaaed@gmail.com at least 190 times.

25. Per Sprint, the only recovery telephone number provided to or by Google, 323-873-7344, is associated with Jamila Saaed and ASAAED@sprintpcs.com. This phone number was found in Victim R.J.'s phone contacts saved as Saaed Alia. Of the hundreds of statements from this number found in Victim R.J.'s phone are "I pray with all of my heart and all of my soul that you and your family get what you deserve… lie and hide bitch… sit there and hide, cunt."

26. As of the time of this writing, financial analysis is ongoing. Per information provided by Venmo, in June 2020, Victim R.J. paid Alia Saaed two payments totaling $2500 with memo lines "to move far away from the stalker" and "for the money you stole." "Contract" payments for $1691 and $3238, respectively, were attempted and then canceled in late August and early September 2020.

27. Victim R.J. has expressed the need for "the noise to stop," the fear for his livelihood, and the fear for the safety and comfort of his girlfriend and child based on SAAED's actions. Victim R.J. has stated the financial and emotional toll of SAAED's actions has been overwhelming. Written statements believed to be from SAAED such as "I'm going to pay you and your family a visit so get your gun ready" or "I'm going to destroy your life and your families" affirm these fears.

28. During the period of time covered in this affidavit, it is believed that SAAED's primary residence was located at 2423 Brasher Ave, Nashville, Tennessee, based on victim testimony and Savannah Police Department reports. Additionally, utilities have been continuously active at this location from 05/14/2020 until at least 06/03/2021. As of 06/03/2021, utilities are listed under subscriber Alia SAAED.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29. As noted earlier in this application, SAAED utilized telephone(s) and/or computer(s) to contact Victim R.J. directly via text, email, or calls, or indirectly via the imposter Facebook account and Web site. I submit that it is reasonable to believe that one or more of these devices will be present on SAAED's person and/or within the "Target Premises" and/or at the time the search is executed.

30. Based on my knowledge, training, and experience, I know that electronic devices, such as the ones referenced above, can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

31. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the cellular telephone was used, the purpose of its use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the cellular telephone because:

6

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.
   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.
   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32. *Nature of examination.* Based on the foregoing, and consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the warrant I am applying for would permit the examination of any cellular telephones located within the Target Premises consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether evidence described by the warrant exists.

## **CONCLUSION**

33. I submit that this affidavit supports probable cause for a search warrant to search the Target Premises, more particularly described in Attachment A, for evidence of crimes related to the Target Offenses, more particularly described in Attachment B.

# ATTACHMENT A
# PREMISES TO BE SEARCHED

1. The premises to be searched is a residence located at 2423 Brasher Ave, Nashville, Tennessee 37206, which is further described as a single story, single family home, light green in color with a light colored and glass front door with the numbers 2423 plainly marked to the left of the door. See attached photographs marked as Attachments A-1 & A-2.

2. The residence to be searched also includes any outbuildings or vehicles found at or near 2423 Brasher Ave, Nashville, Tennessee, which are registered to or connected to Alia SAAED.

3. Any and all cellular telephones or other electronic devices within Alia SAAED's possession during the course of the search at 2423 Brasher Ave, Nashville, Tennessee.

**ATTACHMENT A-1**



11

**ATTACHMENT A-2**



## ATTACHMENT B
## ITEMS TO BE SEIZED

The evidence to be searched for is as follows:

1. Cellular telephones, SIM cards, SD cards, and memory cards compatible with cellular telephones and other such communication devices and any documents relating to such items.

2. For any cellular telephones, and any SIM cards, SD cards, and memory cards compatible with cellular telephones whose seizure is otherwise authorized by this warrant:

    - Any and all records and information relating to the telephone numbers and direct connect numbers or identities assigned to the device;
    - Any and all records and information relating to the address book on the device, including, but not limited to, contact names, phones numbers, addresses, email information, and social media identifiers;
    - Any and all records and information relating to call logs, incoming and outgoing calls, missed calls, and direct connect history information;
  - All voice mail content;
  - All text messages, iMessages, and multimedia message, whether sent, received, or in draft form;
  - Any and all records and information relating to stored photographs and videos;
  - Any and all records and information relating to GPS location history;
  - Any and all records and information relating to internet search history;
  - Any and all records and information relating to types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
  - Any and all records and information related to the sources and customers of drugs, including names, addresses, phone numbers, or any other identifying information;
  - Any and all records and information relating to the user's schedule or travel, including, but not limited to, airline, rental car, and/or hotel reservations, confirmation documentation, receipts, and payment information;
  - Any and all bank records, checks, credit card bills, account information, and other financial records;
  - Any and all records, information, photographs, or videos relating to firearms;
  - Any and all records, information, photographs, or videos relating to Victim R.J. or his associates or other illegal criminal activities;
  - Evidence of user attribution showing who used or owned the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. Laptops, hard drives, or other media storage devices

4. Photographs, artwork, documents or other references or depictions of Victim R.J. or associates, to include references to murder, rape, or other crimes of violence, to include reference to Victim R.J.'s current or previous addresses, phone numbers, email addresses, or other personal information.

5. Documents indicating ownership or use of RAMEZSAYEGH.COM, including but not limited to written notes or statements from Web hosting service providers.

6. Documents, notes, or other reference to email addresses, phone numbers, or other communication accounts utilized by SAAED

7. Firearms, firearms parts, firearms accessories, ammunition, and ammunition components.